**In re Mary Lee LOWRIE, Debtor.**

**Mary Lee LOWRIE, Plaintiff,**

**v.**

**UNITED STATES of America (INTERNAL REVENUE SERVICE), Defendant.**

**Bankruptcy No. BK–S–88–01868–RCJ. Adv. No. 93–2127.**

United States Bankruptcy Court, D. Nevada.

Jan. 7, 1994.

Timothy S. Cory, Las Vegas, NV, for debtor/plaintiff.

J. Scott Moede, Tax Div., U.S. Dept. of Justice, Washington, DC, for IRS.

## MEMORANDUM DECISION RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

ROBERT CLIVE JONES, Chief Judge.

### FACTUAL BACKGROUND

The debtor, Mary Lowrie, failed to file tax returns for tax years 1980 and 1981. In 1984, Lowrie and her attorney met with an Internal Revenue Service ("IRS") agent who prepared substitute 1040 forms, and 1902-B and 3547 forms. The substitute 1040's contained only Lowrie's name, address and social security number; the other forms contained royalty income information obtained from 1099 forms and computations of the resulting tax liability. Lowrie signed the 1902-B's, but not the 1040 or 3547 forms.[1]

Lowrie filed a petition under Chapter 7 of the Bankruptcy Code[2] on June 20, 1988; she received a discharge on September 20 of that year. No complaints challenging the dischargeability of Lowrie's debts were filed. Notice of the discharge was sent to the IRS on or about September 26, 1988.

The IRS continued to attempt collection efforts on Lowrie's 1980 and 1981 taxes. As a result, Lowrie filed a Chapter 13 bankruptcy petition in 1991. That case was later dismissed so that Lowrie could reopen her Chapter 7 case to seek a determination of whether her Chapter 7 discharge covered the 1980 and 1981 taxes.

This adversary proceeding was later filed and the parties have filed cross motions for summary judgment. The court has determined that summary judgment is appropriate because there are no genuine issues of material fact and the sole issue is one of law. See Fed.R.Bankr.P. 7056(c).

### ISSUE

Whether the documents signed by Lowrie in 1984 constitute the filing of a tax return for purposes of Bankruptcy Code § 523(a)(1)(B)(i).

### DISCUSSION

■ Every person liable for payment of a federal tax must file a tax return on the forms prescribed by the Secretary of the Treasury Department. 26 U.S.C. § 6011(a).[3] When a taxpayer fails to file a tax return but is willing to disclose all relevant information, the Secretary may prepare a return "which, being signed by such person, may be received by the Secretary as the return of such person." IRC § 6020(a). When a taxpayer fails to file a return and is not willing to disclose all relevant information, "the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise." IRC § 6020(b)(1). "Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes." IRC § 6020(b)(2).

A person who files a petition under Chapter 7 of the Bankruptcy Code receives a discharge of certain tax liabilities, but is not discharged from tax debts:

(B) with respect to which a return, if required—

(i) was not filed; or

---

1. The 3547 forms contain no signature line. An affidavit filed by the attorney who represented Lowrie at the 1984 meeting states that Lowrie "signed the [forms] based upon the revenue agent's representations that such Forms constituted a substitute for filing her own 1040 returns for those years."

2. All references to the "Bankruptcy Code" are to 11 U.S.C. §§ 101–1330.

3. References to Title 26, the Internal Revenue Code, shall hereafter be in the form of "IRC § __."

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of filing the petition. . . .

11 U.S.C. § 523(a)(1)(B).

Every court that has addressed the issue has held that when a debtor fails to file a tax return and the IRS prepares one for her pursuant to § 6020(b), the debtor is not considered to have filed a return for purposes of § 523(a)(1)(B)(i). *In re Bergstrom*, 949 F.2d 341 (10th Cir.1991); *In re Chapin*, 148 B.R. 304 (C.D.Ill.1992) (noting that holdings of other courts are unanimous on the issue). These courts note that the authority of the IRS to prepare a return on behalf of a non-filing taxpayer is an administrative mechanism by which the IRS may pursue collection and does not obviate the taxpayer's obligation to file a return. *Bergstrom*, 949 F.2d at 343; *In re Rank*, 161 B.R. 406 (Bankr. N.D.Ohio 1993); *In re Rench*, 129 B.R. 649, 651 (Bankr.D.Kan.1991); *In re Pruitt*, 107 B.R. 764, 766 (Bankr.D.Wyo.1989). These courts also note that the legislative history of § 523(a)(1)(B) makes clear that Congress intended that only tax debts for which the debtor actually filed a return are to be discharged and that any other interpretation would encourage non-filing of returns. *See Chapin*, 148 B.R. at 306–307; *Rench*, 129 B.R. at 651; *Pruitt*, 107 B.R. at 766; *In re Hofmann*, 76 B.R. 853, 854 (Bankr.S.D.Fla. 1987).

In the case at bar, the IRS stands on the weight of authority represented by this virtually unbroken line of cases holding that a tax return prepared by the IRS pursuant to IRC § 6020(b) is not a return for purposes of Bankruptcy Code § 523(a)(1)(B)(i). Lowrie, however, asserts that this case differs from the cases cited above because she signed the 1902–B forms which, along with the 3547 forms, were attached to the dummy 1040 forms. Lowrie also asserts that when she and counsel met with the IRS agent in 1984, the agent stated that the forms would serve as "a substitute for filing her own 1040 re-

turns for those years." Affidavit of James E. Ordowski at 2.

Lowrie relies principally on Judge Paskay's decision in *In re Carapella*, 84 B.R. 779 (Bankr.M.D.Fla.1988), the only case to hold for a Chapter 7 debtor under § 523(a)(1)(B)(i). There, the debtor had apparently filed an inaccurate return for 1977 and no returns for 1978 and 1979. The IRS commenced an audit of the debtor and subpoenaed various records of the debtor and shell corporations he owned. At meetings with an IRS agent, the debtor admitted to wrongdoing and cooperated with the IRS in calculating his taxes for the relevant years. The debtor then signed a form 870 "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Assessment." A dummy 1040 form was prepared which was used solely for the purpose of posting the assessments. *Id.* at 780–781.

The debtor argued that by signing the form 870, he had effectively filed a return as required by § 523(a)(1)(B)(i). He relied on Revenue Ruling 74–203 which held that an executed 870 form with accompanying schedules constitutes a return under IRC § 6020(a) (a return prepared by the IRS with the taxpayer's cooperation). *Id.* at 781. The court held for the debtor:

This Court is satisfied that the fact that Form 870 was not accompanied by schedules is of no consequence in this instance because the Government already possessed sufficient information to determine the tax liability of the Debtor. In fact, the record is clear that Revenue Agent Blanco prepared a summary of the taxes due and owing for 1977, 1978 and 1979 and the Debtor agreed and confirmed that those assessments of his tax liability were correct. Hence at the time the Debtor signed the Form 870 the Government possessed sufficient information to calculate his tax liability. Thus, based on Revenue Ruling 74–203, the executed Form 870 was, in fact, an acceptable return adequate to serve as a substitute for Form 1040.

84 B.R. at 782.[4]

The court in *In re Gushue*, 126 B.R. 202 (Bankr.E.D.Pa.1991), substantially limited

---

4. Interestingly, a year later, Judge Paskay held

that where the IRS made an assessment and

the applicability of *Carapella*. In *Gushue*, the debtor had not filed tax returns for 1975 through 1978. The IRS prepared substitute returns using a formula and sent the debtor a notice of deficiency in 1984. The debtor challenged the alleged deficiency in the tax court and entered into a stipulated settlement with the IRS. The parties signed a written stipulation which the tax court approved and the debtor later filed bankruptcy. The debtor then filed an adversary proceeding seeking a declaration that the tax debts were dischargeable. *Id.* at 203.

The debtor relied on Revenue Ruling 74–203 and *Carapella* arguing that the stipulation should be construed as a tax return for purposes of § 523(a)(1)(B)(i). The court rejected this argument, noting that Revenue Ruling 74–203 was a clarification of what constitutes an acceptable return under IRC § 6020(a) where the taxpayer cooperates in preparing the return, not § 6020(b) where the taxpayer is uncooperative. *Id.* at 204. The court also noted that the debtor and his counsel in *Carapella* had been especially cooperative with the IRS. *Id.* at 204 n. 4. Regarding the stipulated settlement, the court reasoned:

> As for the stipulated decision, which was signed by the debtor, we find that it also does not qualify as a return under any of these standards. 26 U.S.C. § 6020(a) was designed to benefit a taxpayer who, after failing to file a return, cooperates with the IRS and provides all information necessary to enable the IRS to prepare the return for the taxpayer. Revenue Ruling 74–203 was announced by the IRS to clarify § 6020(a). An anomalous result would be reached if we were to rule that a debtor, who failed to filed his tax returns, did not cooperate with the IRS in preparing substitute returns and then challenged the IRS' notice of deficiency in the United States Tax Court, is deemed to have filed his returns under 26 U.S.C. § 6020(a) and Revenue Ruling 74–203 simply because he settled his dispute with the IRS and signed

prepared a dummy 870 form for a taxpayer/debtor, the form did not qualify as a return for purposes of IRC § 6020(a) or Bankruptcy Code § 523. *In re D'Avanza*, 101 B.R. 787, 789 (Bankr.M.D.Fla.1989), *aff'd in part, rev'd in part,*

a stipulated decision which was entered by the Tax Court.

126 B.R. at 204–205.

■ The cases discussed above appear to be at odds with one another, but they can be harmonized. The majority of these cases address situations where the debtor has failed to file tax returns and the IRS has prepared substitute returns. Those returns then serve as the basis by which the IRS makes assessments and otherwise attempts to collect the taxes at issue. The taxpayer/debtor has, in such cases, not signed anything and has not admitted owing the taxes. The taxes in those cases are properly held to be non-dischargeable.

■ In a case like *Carapella*, however, the taxpayer/debtor has met with the IRS, signed a form containing sufficient information to calculate his or her tax liability, and admitted owing the taxes. That is, the debtor has essentially consented to the assessment. In such a situation, the documents signed by the debtor and provided to the IRS are properly treated as filed returns for purposes of Bankruptcy Code § 523(a)(1)(B)(i).

Turning to the facts in the case at bar, the Court holds that Lowrie's 1980 and 1981 tax liabilities were discharged by her Chapter 7 discharge. Although Lowrie did not originally file tax returns for 1980 and 1981, she met with the IRS and was presented with a dummy 1040 return and schedules showing royalty income for those years and a resulting tax liability. Based on the IRS agent's representations, Lowrie signed the 1902–B forms thereby admitting the existence of the income and the resulting tax liability. This was done more than two years before Lowrie filed her Chapter 7 petition. The court therefore concludes that, for purposes of § 523(a)(1)(B)(i), Lowrie filed a tax return in 1984 and her 1980 and 1981 tax liabilities were discharged by her Chapter 7 discharge.

132 B.R. 462 (M.D.Fla.1991). *D'Avanza* can be distinguished, however, in that the debtor in that case appears not to have signed the 870 form and the IRS did not have the information about the debtor that it had in *Carapella*.

Accordingly, summary judgment in favor of Lowrie is appropriate. A separate order granting summary judgment in favor of Lowrie shall be entered along with this memorandum.